IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:21-cr-39 |
| MARISSA SUE HULL, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**Susan Paradise Baxter, United States District Judge**

Pending before the Court in this criminal action is an Omnibus Motion for Discovery filed by Defendant Marissa Sue Hull (at times, "Defendant" or "Hull").[1]  ECF No. 677.  Hull's motion will be granted in limited part, dismissed in part, and otherwise denied.

## I.   BACKGROUND

In November of 2021, a grand jury returned an indictment against Hertel & Brown Physical and Aquatic Therapy ("H&B") and twenty individuals affiliated with H&B, including Defendant Hull.  The indictment charged all Defendants with health care fraud and conspiracy to commit wire and health care fraud.  ECF No. 1.

On May 10, 2022, a superseding indictment was returned, charging the same Defendants with the same crimes, but with some amended averments.  ECF No. 425.  In essence, the Government alleges that, between January 2007 and October 2021, the Defendants participated in a scheme whereby false or inflated billing statements were submitted to various public and

---

[1] To the extent Hull has joined in the pretrial motion of any other Defendant, those matters either have been or will be addressed in a separate ruling.

private health care insurers in order to obtain payment for services that were not authorized or were not actually rendered to H&B's patients in the manner described.  According to the Superseding Indictment, the conspiracy resulted in losses of at least $22 million to the insurance entities that were allegedly defrauded.

Hull is one of the individuals named in the Superseding Indictment.  The Government claims that she worked at H&B as a licensed physical therapy assistant beginning in October 2017 and, in that capacity, participated in the alleged offenses.

In January 2022, following this Court's entry of a protective order, the Government began its production of discovery materials, which has occurred on a rolling basis. Among other things, the prosecution has turned over: (i) the search warrants and affidavits relating to the underlying investigation, (ii) records obtained from Medicaid, Medicare, and various private health insurance companies, (iii) evidence seized from H&B's five facilities pursuant to search warrant(s), (iv) consensual videos recorded at the Peach Street H&B facility, (v) an external hard drive containing imaging of the computers at H&B's facilities; (vi) a USB-C flash drive containing emails of certain H&B employees, (vii) H&B YouTube videos, (viii) H&B website information, (ix) Highmark and Medicare claims comparison data, (x) and WebPT records from H&B's Peach Street facility for the period February 23, 2021 to October 6, 2021.  Certain statements which the Government intends to introduce at trial have been provided to all defense counsel.  Each Defendant who was interviewed by law enforcement and/or by a professional conduct investigator received a copy of the relevant interview report(s) and any existing rough notes.  Other individualized disclosures have included college transcripts, continuing education records, criminal histories, bank and tax records, personal email account records, and credit

bureau reports.  In addition, the Government has disclosed information from various witnesses which it considered potentially exculpatory, in accordance with *Brady v. Maryland.* [2]

Hull contends that the prosecution should make certain additional disclosures now or, at least, well in advance of trial.  Accordingly, she filed the instant motion requesting the following:

A. Identification of all documents and materials the Government intends to be used at trial against Defendant Hull;

B. All written or recorded statements, or the true and complete substance of any oral statements relevant in any way to the alleged offense conduct allegedly made by Hull, as well as the identities of the person(s) to whom any such statements were made;

C. Disclosure of the names and addresses of any expert witnesses the Government intents to call at trial, along with their qualifications and the subject of their expected testimony and reports;

D. The identity and current address of any informants or cooperating witnesses the Government has used or intends to use against Defendant Hull;

E. Any and all complete statements, and the circumstances of such statements, which were made by any informants and/or cooperating witnesses in connection with the Government's investigation of this case;

F. The identity and address of any other persons who have been interviewed by any government official about the case, whether or not the Government intends to call them at time of trial;

G. All statements of trial witnesses, including grand jury testimony relating to this case, including Jencks Act material, at least 2 months prior to trial;

H. All information and evidence material to either guilt or punishment which is favorable or tends to be favorable to Defendant Hull, as required under *Brady v. Maryland,* 373 U.S. 83 (1963); and

I. All impeachment information for Government witnesses as required by *Giglio v. United States* [3] and related cases.

---

[2] *See* 373 U.S. 83 (1963).

[3] *See* 405 U.S. 150 (1972).

ECF No. 677 at 3-9

The Government has responded to Hull's motion, ECF No. 722, and, following oral argument, both Hull and the Government filed supplemental briefs.  ECF Nos. 744 and 747.  The Court now addresses the requests made by Hull in her Omnibus Motion and related briefing.

## II.     GOVERNING LEGAL PRINCIPLES

The United States Court of Appeals for the Third Circuit has recognized that discovery in criminal cases is limited to those areas delineated in Rule 16, "with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution." *United States v. Ramos*, 27 F.3d 65, 67-68 (3d Cir. 1994).  As a general matter these other areas are limited to the Jencks Act[4] and materials available pursuant to the "*Brady* doctrine.*"  Id.* at 68.  In *United States v. Coles*, the district court aptly summarized the interplay of Rule 16, the Jencks Act, and the *Brady* doctrine, as follows:

> Most of the government's pretrial disclosure obligations stem from Rule 16(a). *See* FED. R. CRIM. P. 16(a). The rule establishes six categories of information that the government must produce to an individual defendant "[u]pon ... request." *See id.* Rules 16(a)(1)(A) and (B) task the government to disclose a defendant's oral, written, and recorded statements, and Rule 16(a)(1)(D) requires disclosure of a defendant's prior record. . . . Rule 16(a)(1)(E) is the broadest provision, requiring the government to allow a defendant "to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings[,] or places," if the item is in the possession, custody, or control of the government and is "material to preparing the defense," is intended to be used in the government's case-in-chief at trial, or "was obtained from or belongs to the defendant." . . . . Rule 16(a)(1)(F) requires the same for the results or reports of any physical or mental examinations or scientific tests or experiments that are in the possession, custody, or control of the government; are known to exist (or reasonably should be known to exist) by the attorney for the government; and either are material to preparing the defense or intended to be used in the government's case-in-chief. . . . Under Rule 16(a)(1)(G),

---

[4] *See* 18 U.S.C. §3500.

the government must provide defendants with a written summary of any expert testimony it intends to use in its case-in-chief. . . .

Rule 16 includes important caveats. Except as authorized under Rule 16(a)(1)(A) through (D), (F), and (G), the rule exempts government work product from discovery and inspection. *See* FED. R. CRIM. P. 16(a)(2). Government work product includes "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." *See id.* The rule also exempts from discovery and inspection the statements of prospective government witnesses, except as provided in the Jencks Act. *See id.* (citing 18 U.S.C. § 3500).

The Jencks Act protects from disclosure statements or reports made by prospective government witnesses until after they testify on direct examination at trial. *See* 18 U.S.C. § 3500(a). After the witness testifies, the Act entitles the defendant to a copy of "any statement ... of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." *Id.* § 3500(b) . . . The Act is intended to ensure that a defendant has "an opportunity to review the witness's statements for any possible inconsistencies that he might use to impeach the witness." . . .

***

Finally, under *Brady v. Maryland,* . . . the government is obligated to disclose to a criminal defendant any evidence in the government's possession that is "favorable to an accused" and "material either to guilt or to punishment." . . . . The government must also disclose any "evidence that goes to the credibility of crucial prosecution witnesses." . . . Known as *Giglio* material, *see Giglio v. United States,* 405 U.S. 150 . . . (1972), "this evidence is a subset of *Brady* material insofar as it addresses situations in which certain evidence about a witness's credibility or motivation to testify exists." . . . Failure to disclose either type of material violates the defendant's due-process rights. . . . Admissibility is relevant but not a prerequisite to disclosure under *Brady,* since "inadmissible evidence may be material if it could ... [lead] to the discovery of admissible evidence." . . . .

511 F. Supp. 3d 566, 574-76 (M.D. Pa. 2021) (cleaned up). With the foregoing principles in mind, the Court turns to Hull's various requests for information.

III.   **DISCUSSION**

A. *Identification of Government Trial Materials*

Joining in an argument raised by co-Defendant Hertel, *see* ECF No. 624, Hull requests that the Government be required to identify all documents and materials it intends to use against her at trial.  Hull maintains that, without this information, it is virtually impossible for her to effectively prepare a defense because the Government has made no specific averments of misconduct on her part in the Superseding Indictment.  Instead, she argues, the Government has offered only "broad allegations" of her involvement in a conspiracy to knowingly defraud the various health insurance plans through "broad categories" of false and fraudulent conduct over a 14-year period at H&B's various locations.

The Government opposes Hull's request.  It argues that there is no support in Rule 16 for immediate disclosure of its trial exhibits.  The Government notes that much of the evidence in question is material that Hull should have familiarity with, as items such as emails, medical documentation and billing records were generated by H&B employees.  Further, the Government points out that Hull has a smaller time span of documents to review relative to her own employment at H&B, which began in late 2017.  Finally, the Government asserts that it makes little sense to order immediate disclosure of the prosecution's trial evidence when no trial date has been set and the admissibility of certain evidence will likely be challenged.

The Government's opposition is well-taken, as the persuasive authority in this district and elsewhere weighs against Hull's present request for disclosure of the prosecution's trial exhibits. *United States v. Chatman*, No. CRIM. 3:10-30, 2011 WL 7037129, at *5 (W.D. Pa. Nov. 23, 2011) (rejecting defendant's request to compel the Government to identify its trial evidence based on the "voluminous nature of the evidence expected to be offered" against defendant at

trial); *United States v. Bledsoe*, No. 2:05CR370, 2006 WL 3098770, at *1 (W.D. Pa. Oct. 30, 2006) ("Rule 16 was not designed to provide a defendant with a vehicle to discover the government's case in detail or the strategy it intends to pursue at trial."); *United States v. Litman*, 547 F. Supp. 645, 652 (W.D. Pa. 1982) (denying defendants' request to compel designation of prosecution's trial exhibits from among those produced in discovery because the court found "no case or statutory law supporting the defendants' request for such a list"); *accord United States v. Prince*, 618 F.3d 551, 561–62 (6th Cir. 2010) ("Rule 16 does not entitle a defendant to pretrial disclosure of the government's exhibit list. The district court did not abuse its discretion by refusing to require the government to provide one in this case.").

The Court has previously indicated its appreciation for the complexity of this case and the Defendants' concerns about identifying relevant evidence among the troves of data that have been produced in discovery.  Given the current posture of this case, however, Hull's motion to compel identification of the Government's trial exhibits is premature.  The Court will address this issue at a subsequent point in time as a matter of trial management.  Presently, Hull's motion to compel disclosure of trial materials will be denied without prejudice.

B. *Relevant Statements Made by Hull*

Hull next requests production of "[a]ll written or recorded statements, or the true *and complete* substance of any oral statements relevant in any way to the alleged offense conduct, allegedly made by [her], whether before or after her arrest, to any law enforcement officials, or to any persons working for or in cooperation with the Government and/or any law enforcement agents or officials, . . . as well as the identity of the person(s) to whom any such statements were made." ECF No. 677 at 4 (emphasis in original).  Hull's request includes "all possibly relevant

7

conversation[s]" she may have had with government informants and/or cooperating witnesses. *Id.* The request also includes any rough notes and drafts of such statements made by any agents or law enforcement officials. Relatedly, Hull requests "the name, address and telephone number of each person present when any such statements were allegedly made by [her]," as well as "the time, place and date of such statements" and some indication "whether any such statements were volunteered or in response to questions, directions, or communications of any kind." *Id.*

This aspect of Hull's motion is governed by Rule 16(a)(1)(A) and (B). Disclosures of a defendant's oral statements are provided for in subsection (A) as follows:

> Upon a defendant's request, the government must disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial.

Here, the Government represents that Hull never made any oral statements to law enforcement agents in response to an interrogation; therefore, it states there is nothing to produce pursuant to Rule 16(a)(1)(A). Hull does not contend otherwise, so this aspect of her motion will be dismissed as moot.

Disclosures of a defendant's written or recorded statements are provided for in subsection (B) as follows:

> Upon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, or photographing, all of the following:
>
> **(i)** any relevant written or recorded statement by the defendant if:
>
> • the statement is within the government's possession, custody, or control; and
>
> • the attorney for the government knows--or through due diligence could know--that the statement exists;
>
> **(ii)** the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent; and

8

**(iii)** the defendant's recorded testimony before a grand jury relating to the charged offense.

Based on the Government's representation that Hull did not make oral statements in response to a law enforcement interrogation, subsection (B)(ii) is inapplicable. The Government further states that it is unaware of any relevant written or recorded statement given by Hull. Moreover, there is no indication that Hull gave testimony to the grand jury relative to the offenses charged in this case, and Hull does not assert that she did. Therefore, subsections (B)(i) and (iii) also appear to be inapplicable. As a result, Hull's request for discovery pursuant to Rule 16(a)(1)(A) and (B) will be dismissed as moot.

To the extent Hull seeks information concerning oral statements she may have made to co-Defendants, cooperating witnesses, or informants, her request finds no support in Rule 16. Assuming for the sake of argument that Hull made "relevant" statements to someone who was secretly operating as a cooperating witness or informant for the Government in this case, her statements would not have been in response to "*interrogation*" by someone whom she "*knew* was a government agent." Moreover, Rule 16 does not authorize Hull's discovery or inspection of statements that prospective government witnesses may have reported to law enforcement, except as provided in the Jencks Act. *See* Fed. R. Crim. P. 16(a)(2). The Jencks Act, in turn, prohibits the discovery or inspection of a prospective Government witness's statement or report "until said witness has testified on direct examination in the trial of the case." 18 U.S.C. §3500. Thus, Hull is not presently entitled to discovery of any unrecorded statement she may have made to a cooperating witnesses or informants, unless the statement is favorable to her and material either to her guilt or to her punishment, in which case she is entitled to prompt disclosure of the statement pursuant to *Brady v. Maryland*, 373 U.S. at 87, discussed at more length below. To

the extent Hull seeks disclosure of any non-exculpatory statements she may have made to

"persons working for or in cooperation with the Government," her request for such statements --

and related rough drafts and notes -- will be denied.

    *C.   Expert Witness Disclosures*

       Hull next requests the names and addresses of any expert witnesses the Government

intends to call at trial.  Further, Hull requests information regarding each expert's "qualifications,

subject of testimony and reports and/or summary of testimony, including opinions and bases for

same."  ECF No. 677 at 4.

       Rule 16(a)(1)(G) governs the parties' respective duties to make expert witness

disclosures.  In terms of content, the disclosure for any expert witness must contain:

> • a complete statement of all opinions that the government will elicit from the witness in its case-in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed under (b)(1)(C);
>
> • the bases and reasons for them;
>
> • the witness's qualifications, including a list of all publications authored in the previous 10 years; and
>
> • a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.

Fed. R. Crim. P. 16(a)(1)(G)(iii).  The district court, by order or local rule, must set a time for the

government to make its disclosures which is "sufficiently before trial to provide a fair

opportunity for the defendant to meet the government's evidence."  Fed. R. Crim. P.

16(a)(1)(G)(ii).

       In its response to Hull's motion, the Government asserts that, if it decides to call any

expert witnesses at trial, it will comply with Rule 16(a)(1)(G), and the contents of the

prosecution's disclosure will comport with the requirements in subsection (iii).  The Court

accepts the Government's representation and will enter a scheduling order at a subsequent point

in these proceedings which sets a deadline for expert witness disclosures, well in advance of

trial, such that Hull and the other Defendants have sufficient time to meet the Government's

expert witness evidence.  More specifically, the Court anticipates entering a scheduling order

following the disposition of the parties' initial discovery motions, which establishes deadlines for

additional pretrial motions practice and expert witness disclosures, as well as a trial date.

Accordingly, this aspect of Hull's motion will be denied without prejudice to be renewed, if

warranted, at a later phase of these proceedings.

### D. Identities and Addresses of Government Informants and Cooperating Witnesses

Next, Hull seeks to discover the identity and current address of "any informants or

cooperating witnesses the Government has used or intends to use" against her.  ECF No. 677 at

5.  The Government opposes this request, arguing that Hull has not demonstrated a need for this

information under the balancing test set forth in *Roviaro v. United States*, 353 U.S. 53 (1957).

In *Roviaro*, the Supreme Court recognized "the Government's privilege to withhold from

disclosure the identity of persons who furnish information of violations of law to officers

charged with enforcement of that law."  353 U.S. at 59.  The Court also held, however, that this

privilege is not limitless.  "'Where the disclosure of an informer's identity, or of the contents of

his communication, is relevant and helpful to the defense of an accused, or is essential to a fair

determination of a cause, the privilege must give way.'"  *United States v. Jiles*, 658 F.2d 194,

196 (3d Cir. 1981) (quoting *Roviaro*, 353 U.S. at 60-61).  The "burden to demonstrate the need

for disclosure rests on the defendant."  *United States v. Johnson*, 677 F.3d 138, 143 (3d Cir.

2012) (citing *Jiles*, 658 F.2d at 197). "[O]nce a defendant sets forth a specific need for disclosure the court should balance 'the public interest in protecting the flow of information against the individual's right to prepare his defense.'" *Jiles*, 658 F.2d at 196 (quoting *Roviaro*, 353 U.S. at 62). "The result of the balancing will depend upon the particular circumstances of the case, 'taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.'" *Jiles*, 658 F. 2d at 196 (quoting *Roviaro*, 353 U.S. at 62).

Hull's argument on this matter is focused on one particular individual whom she believes may be a cooperating witness and may have provided information in support of the Government's search warrant affidavit. Specifically, Hull is referring to the facility director and managing employee at the H&B office where she was employed. According to Hull, this individual was her director, manager, and supervisor from the time that Hull was hired until shortly after the search warrants were executed, at which time the facility director stopped showing up for work and presumably quit her employment. Hull maintains that, to the extent she herself participated in any alleged practices or policies regarding client care, the generation of treatment records, or other activity at issue in this prosecution, this was done at the direction, and under the supervision, of the facility director, who Hull believes has not been charged with any offenses. Hull further claims that she had significant contact and conversations with the facility director during the time she worked for H&B, but she has no idea if the Government intends to use any of these conversations against her.

Hull states she has reason to believe that the facility director possesses exculpatory information about her, but no *Brady* information had been forthcoming from the Government. Hull's attorney has indicated that he reached out to the facility director but did not believe this

individual would speak with him.  Therefore, Hull's attorney is seeking information about what the facility director may have told the Government.

Assistant U.S. Attorney Trabold has advised the Court that he was not aware of any information provided by the individual in question that exculpated Hull, but he was willing to double check any Government's reports summarizing the facility director's statements in that regard.  Beyond this, the prosecution has opposed disclosing the contents of the witness's statements to defense counsel at this time.

Based on the foregoing, it is evident that Hull is already aware of the identity of the individual in question and also possesses contact information for that individual. Therefore, her request for the "identity and current address" of "any informants or cooperating witnesses the Government has used or intends to use" against her is moot with respect to the individual in question.  Insofar as Hull's discovery request relates to *other* potential informants or cooperating witnesses, Hull has not met her burden of demonstrating a need for disclosure that overcomes the Government's privilege of confidentiality.  Accordingly, her request to discover the identities and addresses of other government informants and/or cooperating witnesses will be denied.

### E.  Statements Made by Government Informants and Cooperating Witnesses

Related to Hull's request for identifying information is her request for "[a]ny and all complete statements, and the circumstances of such statements, which were made by any informants and/or cooperating witnesses in connection with the Government's investigation in this case."  ECF No. 677 at 5.  For each informant or cooperating witness, Hull seeks to know "how the informant/cooperating witness obtained his/her information"; whether he or she "approached the Government, or vice versa," and "whether the informant /cooperating witness

has received any benefit, promise, or hope of same, in whatever form, for his or her information." *Id.*

Here again, the Court finds that Hull has not satisfied her burden of demonstrating a need for the disclosures she is seeking. Under the law of this circuit, "'mere speculation that an eyewitness may have some evidence helpful to defendant's case is not sufficient to show the specific need required by *Roviaro*.'" *United States v. Griffith*, 598 F. Supp. 3d 221, 239 (M.D. Pa. 2022) (quoting *Johnson*, 677 F.3d at 143). Except with respect to one individual, Hull has offered no information at all concerning her alleged need to know the contents and circumstances of informant and cooperative witness statements. As to the one individual whom Hull has singled out as a suspected informant, she has not articulated a need for the witness's statements which outweighs the "public interest in encouraging persons to supply the government with information concerning crimes." *United States v. Brown*, 3 F.3d 673, 693 (3d Cir. 1993). As noted, AUSA Trabold previously represented that he was unaware of any exculpatory information provided by the facilities director whom Hull referenced, but Mr. Trabold also expressed a willingness to double check the Government's files on the matter. In an abundance of caution, the Court will direct the prosecution to review its evidence and to produce forthwith any information provided by the individual in question that is exculpatory of Hull. To the extent no such exculpatory information exists, the prosecution will be directed to promptly advise Hull's counsel of that fact.

To the extent Hull seeks to know "whether the informant /cooperating witness has received any benefit, promise, or hope of same, in whatever form, for his or her information," such information is discoverable as *Giglio* impeachment information if the witness's credibility may be determinative of the Defendant's guilt or innocence. *See Giglio,* 405 U.S. at 154; *United*

14

*States v. Starusko*, 729 F.2d 256, 260 (3d Cir. 1984); *Ramos*, 27 F.3d at 68.  The Court has

previously indicated that, once a trial date is established, it will enter a pretrial order which

provides for early disclosure of impeachment information in a timeframe that will ensure its

effective use at trial.  To that end, the Court will entertain the possibility of requiring *Giglio*

disclosures more than two weeks in advance of trial.  However, Hull does not have a

constitutional right to such information at this stage of the proceedings.  *See Coles*, 511 F. Supp.

3d at 577 (impeachment material that concerns a witness's credibility or motivation to testify

may be disclosed at a later time, so long as it is provided in time for its effective use at trial)

(citing authority).

   To the extent the individual in question may have communicated inculpatory information,

Hull has not shown a need for the information that outweighs the strong public interest in

protecting the flow of information from confidential sources.  In this regard, Hull's interest in

discovering and assessing any potential evidence against her is no different from that of any

other defendant accused of criminal conduct.  Moreover, Hull is familiar with the individual in

question and has some basis to surmise what type of information, if any, may possibly be offered

by the witness and/or how she might defend against such information.  Accordingly, any

inculpatory information communicated by the witness in question must be produced, if at all,

consistent with the Jencks Act.  *See, e.g., Coles*, 511 F. Supp. 3d at 580 (noting that Rule 16 does

not entitle a defendant to discovery of a co-defendant's or unindicted co-conspirator's

statements); *United States v. Johnson*, 218 F. Supp. 3d 454, 458 (W.D. Pa. 2016) ("Every circuit

court to address the issue has held that [co-conspirators'] statements are not discoverable under

Rule 16 and that disclosure of such statements is governed by the Jencks Act, regardless of

whether the co-conspirator will be called as a witness.").  The law of this circuit is clear that "the

15

government has no obligation to produce Jencks material until the witness has testified" at trial. *Maury*, 695 F.3d at 248 (citing 18 U.S.C. §3500(a)); *see United States v. Murphy*, 569 F.2d 771, 773 (3d Cir. 1978) ("[T]he Jencks Act flatly states that disclosure of prior statements by government witnesses may not be compelled until said witness has testified on direct examination in the trial of the case.") (citation and quotation marks omitted).

"Fortunately, in an effort to minimize trial interruptions, federal prosecutors often agree to turn Jencks material over before the witness testifies." *Coles*, 511 F. Supp. 3d at 575 (citing *Murphy*, 569 F.2d at 773 n.5; *Maury*, 695 F.3d at 248 n.18).  Because the Government has expressed a willingness to make early disclosures of Jencks materials, Hull will have an opportunity to evaluate, in advance of trial, any prior statements given by the individual in question, should the Government decide to offer that individual as a trial witness.  Alternatively, Hull will have an opportunity to subpoena the individual as a trial witness if she so desires. Hull's request for immediate disclosure of the circumstances and contents of communications by confidential informants or witnesses will be denied, except insofar as any such information is immediately discoverable pursuant to *Brady*.

F.   *Identity and Addresses of Persons Interviewed About this Case*

Next, Hull requests "the identity and present address of any other persons who have been interviewed by any government official about the case, whether or not the Government intends to call them at time of trial."  ECF No. 677 at 5.  Hull posits that "the necessity for discovery of persons . . . whom the Government does *not* intend to call may be even greater than discovery of the names of witnesses who will be called[,]" because the former group "may have information

*favorable* to the defendant which cannot be obtained except through this request for discovery." *Id.* (emphasis in the original).

Hull's request for this information will be denied. A criminal defendant is not entitled to conduct a wholesale review of the government's investigation. *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) (there is no general constitutional right to discovery in a criminal case); *see also Johnson*, 218 F. Supp. 3d at 457 ("Rule 16 was not designed to provide a defendant with a vehicle to discover the government's case in detail.") (citing *United States v. Fioravanti*, 412 F.2d 407, 410 (3d Cir.)). And it is "'firmly established'" under the law of this circuit that "the government is under no obligation 'to divulge the identity of its witnesses in a noncapital case.'" *Coles*, 511 F. Supp. 3d at 580 (quoting *United States v. Addonizio*, 451 F.2d 49, 62 (3d Cir. 1971); also citing *Gov't of Virgin Islands v. Martinez*, 847 F.2d 125, 128 (3d Cir. 1988), and *United States v. DiPasquale*, 740 F.2d 1282, 1294 (3d Cir. 1984)). "Similarly, there is no authority to support a defendant's request for the specifics of each government witness' proposed testimony." *Johnson*, 218 F. Supp. 3d at 458 (citing *Fioravanti*, 412 F.2d at 410).

Here, Hull has offered no persuasive basis for compelling the disclosure of name and addresses of those individuals who have been interviewed by the Government relative to this case. Her only justification is that individuals who are not called to testify could *possibly* possess information that could help her defense. On that point, the Government has repeatedly acknowledged its *Brady* obligations throughout the pendency of this case. In addition, the Government has disclosed to the defense the identities of numerous individuals who provided arguable *Brady* information, along with a summary of their potentially exculpatory statements. The Government represents that it will continue to abide by its disclosure obligations to the

extent additional information favorable to the defense is uncovered.  The Court accepts the Government's representations in this regard.

Accordingly, to the extent this Court possesses the inherent discretion to order additional disclosures of the identities and addresses of individuals interviewed by the Government in this case, the Court declines to exercise that discretion, absent more compelling circumstances.  *See, e.g., Coles*, 511 F. Supp. 3d at 580 (rejecting defendant's request for early disclosure of government's witness list where defendant "fail[ed] to articulate a compelling need for immediate identification of witnesses other than a generalized desire to learn more about the government's case"); *Johnson*, 218 F. Supp. 3d 454, 458 (W.D. Pa. 2016) ("Assuming arguendo that this court has some residual discretion to order the pretrial disclosure of the government's evidence in appropriate circumstances, the current record falls woefully short of presenting sufficient grounds to justify such an extraordinary measure.").  This aspect of Hull's motion will be denied.

### G.  *Early Disclosure of Jencks Act Materials*

Hull requests disclosure of "[a]ll statements of trial witnesses, including grand jury testimony relating to this case, and including all other . . .  Jencks Act material at least 2 months before trial."  ECF No. 677 at 6.  Noting that, in *Coles, supra*, the Government produced Jencks Act material one month before trial, Hull posits that an even more generous disclosure period is warranted here, where concerns about witness safety are lacking.

As discussed, the Jencks Act provides that "no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said

witness has testified on direct examination in the trial of the case." 18 U.S.C. §3500(a).

Accordingly, "the government has no obligation to produce Jencks material until the witness has

testified." *Maury*, 695 F.3d at 248.  And notwithstanding Hull's arguments to the contrary, this

Court lacks the authority to compel early disclosure of Jencks material.  *See, e.g., Murphy*, 569

F.2d at 773 (recognizing an "unbroken precedent in the Courts of Appeals denying to district

courts the power to compel production of the statements of government witnesses until

conclusion of direct examination at the trial."); *United States v. Nickas*, No. 3:21-CR-143, 2022

WL 2657114, at *8 (M.D. Pa. July 8, 2022) ("[T]here is no authority by which th(e) court can

compel the government to provide Jencks Act statements prior to the time any government

witness has testified on direct examination at trial.")(quoting *United States v. Yawson*, No.

CRIM. 13-271, 2014 WL 3401663, at *3 (W.D. Pa. July 10, 2014)); *United States v. Taylor*,

2018 WL 1960669, *5 (M.D. Pa. April 26, 2018) (denying defendants' requests for early

disclosure of Jencks material because the court lacked authority to compel the government to

disclose such material, except as specified in the Act).

  Here, the Government has expressed a willingness to make disclosures of Jencks

materials two weeks in advance of trial.  While the Court will encourage the Government to

consider an even more advanced period of disclosure, the Court has no authority to compel it.

Therefore, Hull's request will be denied.

### H. Disclosure of Brady and Giglio Information

  Hull's next request involves information that is discoverable under *Brady v. Maryland,*

373 U.S. 83 (1963), and *United States v. Giglio*, 405 U.S. 150 (1972).  ECF No. 677 at 6-9.  She

requests that the Government be ordered to produce this information as soon as possible to allow her attorney adequate time to effectively prepare her case. *Id.* at 10.

Pursuant to *Brady,* the prosecution has an ongoing duty to turn over "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment[.]" 373 U.S. at 87. The *Brady* doctrine is generally understood as imposing a duty of minimum fairness on prosecutors, based on a defendant's due process rights to a fair trial. *United States v. Higgs*, 713 F.2d 39, 42 (3d Cir. 1983). Under *Giglio,* 405 U.S. at 154, the prosecution's disclosure obligation extends to evidence which may be used to impeach the testimony of a government witness when the credibility of the witness may have an effect on the jury's determination of guilt or innocence. *See Ramos*, 27 F.3d at 68 (*Brady* material includes those that "go to the heart of the defendant's guilt or innocence" as well as "materials that might affect the jury's judgment of the credibility of a crucial prosecution witness") (quoting *United States v. Hill*, 976 F.2d 132, 134-35 (3d Cir. 1992)).

What constitutes favorable and material evidence under *Brady* is highly dependent on the particular item in question and necessarily involves a measure of discretion on the part of the prosecution. "Even though [the Government's] duty of disclosure is tightly tethered to constitutional guarantees of due process, 'the Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense.'" *Smith v. Holtz*, 210 F.3d 186, 196 (3d Cir. 2000) (quoting at *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)); *see also United States v. Ruiz*, 536 U.S. 622, 629 (2002) ("[T]he Constitution does not require the prosecutor to share all useful information with the defendant"). Thus, the Government must "make judgment calls about what would count as favorable evidence" because

"the very fact that the character of a piece of evidence as favorable will often turn on the context of the existing or potential evidentiary record." *Kyles,* 514 U.S. at 439.

Ultimately, *Brady* and its progeny "establish a prosecutorial obligation rather than a general rule of pretrial discovery." *United States v. Beech*, 307 F.R.D. 437, 441 (W.D. Pa. 2015); *Coles,* 511 F. Supp. 3d at 576. Here, the Government represents that it is aware of its *Brady* obligations, it has already turned over certain information that is favorable to the defense, and it will continue to disclose any additional *Brady* material that is uncovered in the course of its trial preparation. Inasmuch as the prosecuting attorney is an experienced officer of the court in good standing and has demonstrated past compliance with the Government's *Brady* obligations, the Court accepts his representations.

As previously discussed, the Court has directed the Government to revisit its files relative to the individual identified by Hull as a suspected cooperating witness and produce forthwith any information that is potentially exculpatory of Hull. In doing so, the prosecution should resolve "doubtful questions" in favor of disclosure, *Kyles*, 514 U.S. at 429, bearing in mind that "the United States Supreme Court favors a liberal policy of disclosure of exculpatory material." *Coles*, 511 F. Supp. 3d at 576 (citing *Kyles, supra*). Apart from this particular issue, Hull's request for *Brady* disclosures will be denied without prejudice. *See United States v. Garrido*, Case No. 2:22-cr-19, 2023 WL 198780, at *3 (D.N.J. Jan. 17, 2023) (denying defendant's motion to compel *Brady* information as moot in light of government's representation that it was not in possession of information defendant seeks and that it understands and will comply with its continuing obligations under *Brady*, *Giglio*, and the Jencks Act); *United States v. Graham*, No. CR 21-645, 2022 WL 4132488, at *5 (D.N.J. Sept. 12, 2022) (same).

With respect to *Giglio* disclosures, Hull has provided a laundry list of items that she believes would constitute discoverable impeachment information.  ECF No. 677 at 6-9, ¶¶1-15. The Government acknowledges its obligations relative to *Giglio* and has stated its intention to provide such material at the same time it provides Jencks Act materials – namely, two weeks prior to trial.  The Government points out that present disclosure of *Giglio* evidence would essentially force the prosecution to produce a list of witnesses and possibly identify cooperators. Furthermore, the Government posits that production of *Giglio* information is not presently feasible, as pretrial motions practice has not concluded and a trial date has not yet been set.  It also suggests that Hull's requests are overbroad and that Hull is attempting to use the Government's *Giglio* obligations as a rule of pretrial discovery rather than a means of achieving minimum fairness.

On balance, the Government's position is well taken.  Substantively, "it is difficult to analyze, prior to trial, whether potential impeachment evidence falls within *Brady* without knowing what role a certain witness will play in the government's case." *Starusko*, 729 F.2d at 261.  Yet certain parameters may be assumed. "Under firmly established Supreme Court precedent including, *inter alia*, *Brady*, *Giglio*, *Strickler* [*v. Greene*, 527 U.S. 263 . . . (1999)], [*U. S. v.*] *Bagley*, 473 U.S. 667. . . (1985)], and *Kyles*, the prosecution must turn over evidence that is 'favorable to the accused.'" *Coles,* 511 F. Supp. 3d at 583 (ellipses added; other alteration in the original).  This includes any explicit cooperation agreements and immunity deals for government witnesses, as well as other "impeachment evidence regarding favorable treatment or even the possibility or expectation of favorable treatment; evidence that impugns the reliability of the witness's testimony; and evidence of bias, prejudice, or ulterior motives affecting the witness's credibility." *Id.* (citing *Harshman v. Superintendent*, 368 F. Supp. 3d 776, 790 (M.D.

22

Pa. 2019) (citing additional authority)).  The Government's obligation "extends 'beyond evidence in the prosecutor's actual possession,' . . . and imposes on prosecutors an affirmative 'duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.'" *Id.* quoting (*United States v. Risha*, 445 F.3d 298, 303 (3d Cir. 2006)).

As for when relevant *Brady* and *Giglio* information must be turned over, "[d]ecisional law guides the timing of the required disclosures." *Coles*, 511 F. Supp. 3d at 576.  Actual exculpatory material that "go[es] to the heart of the defendant's guilt or innocence," *see Higgs*, 713 F.2d at 42, must be disclosed on a rolling basis without undue delay.  *See United States v. Collier*, No. 2:21CR375, 2023 WL 3932537, at *2 (W.D. Pa. June 9, 2023); *Coles*, 511 F. Supp. 3d at 576-77.  Impeachment material that concerns "a witness's credibility or motivation to testify," *see Maury*, 695 F.3d at 249, may be disclosed at a later time, so long as it is provided "in time for its effective use at trial."  *Higgs*, 713 F.2d at 44; *Collier*, supra, at *2; *Coles*, 511 F. Supp. 3d at 577.  Nevertheless, district courts have the general discretionary authority to order the pretrial disclosure of *Brady* impeachment material in a manner that will ensure "the effective administration of the criminal justice system." *Starusko*, 729 F.2d at 261; *Collier*, 2023 WL 3932537, at *2; *Coles*, 511 F. Supp. 3d at 577.  And in this circuit, there is a "longstanding policy of encouraging early production." *Starusko*, 729 F.2d at 261; *Coles*, 511 F. Supp. 3d at 577.

Here, no trial date has yet been established, but it is likely to be months away.  Once a definitive trial date is established, the Court will enter a pretrial order that provides for early disclosure of impeachment information in a timeframe that will ensure its effective use at trial.

To that end, the Court will entertain the possibility of requiring *Giglio* disclosures more than two weeks in advance of trial.  To the extent Hull requests immediate disclosure of *Giglio* impeachment information, her request is denied without prejudice to be reasserted, if warranted, at a later stage of these proceedings.

I.   *Hull's Reservation of Right to File Additional Pretrial Motions*

Finally, Hull moves for leave to file additional motions which might become necessary following the Government's disclosure of the information sought in her motion.  Hull's motion in this respect is granted.  To that end, the Court will enter an order, in due course, establishing timeframes for further motions practice, expert disclosures, and a trial date.  Hull will be permitted to file any additional pretrial motions she deems appropriate within the timeline that the Court establishes in its order.

## IV.    CONCLUSION

For the reasons set forth herein, Hull's Omnibus Motion for Discovery will be granted insofar as the Government will be directed to review its evidence concerning the individual identified by Defendant Hull as a possible informant / cooperating witness.  The Government will be directed to produce to Hull's attorney, forthwith, any information provided by that individual which may be exculpatory of Defendant Hull.  To the extent no such information exists, the prosecution will be directed to promptly advise Hull's attorney of that fact.

The motion will also be granted with respect to Hull's request for leave to file additional pretrial motions, as warranted, following the Court's disposition of all initial pretrial discovery motions.  To that end, the Court will issue a pretrial order in due course which establishes a deadline for the filing of additional pretrial motions.

24

Hull's motion will be dismissed as moot insofar as she seeks statements that are discoverable under Rule 16(a)(1)(A) and (B).  The motion will be denied without prejudice insofar as Hull seeks:  (i) disclosure of the Government's trial exhibits, (ii) information concerning the Government's expert witnesses pursuant to Rule 16(a)(1)(G), (iii) disclosure of additional, unspecified *Brady* material, and (iv) the immediate disclosure of *Giglio* impeachment information. In all other respects, the motion will be denied.

An appropriate Order follows.

Susan Paradise Baxter
United States District Judge